Frost, J.
dissenting. The jury were instructed that a voluntary assignment by a debtor, whose insolvency was reduced to certainty, of his whole estate to one creditor for the payment of his claim, was an undue preference, within the meaning of the Act. A new trial is granted, on the ground that such an assignment, unless fraudulent, is not an undue preference, and that the question of fraud should have been submitted to the jury. A brief review of the cases will shew that the judgment of the court goes beyond all former authorities ; and a cursory consideration of the effects of the decision will shew that the intention of the legislature is frustrated by it.
In Walker vs. Briggs, the defendant was arrested on 5th September, under a ca. sa. issued on a judgment of the plaintiff, and gave bond for the prison rules, but took no steps for his discharge. Afterwards, on the 12th October, he was arrested under ca. sa. at the suit of Robert Cath-cart. On the 13th, he filed a schedule of his whole estate, for a discharge under Cathcart’s execution, and on the 22d, assigned it to Cathcart, and was discharged. A part of the property assigned to Cathcart consisted of choses in action. On the application of the defendant af-terwards, for a discharge from the plaintiff’s execution, it was resisted, and, among other objections, it was alleged “that the defendant had, since his arrest, assigned his estate to one creditor, Robert Cathcart, in preference to the plaintiff.” The objection to the defendant’s discharge was not. that he had fraudulently assigned his whole estate. It was held that the defendant was guilty of an undue preference. In the opinion of the court it is said, “the question of undue preference, in the case under consideration, depends upon the fact, whether the defendant was compelled, by law, to make an assignment to Cathcart, in preference to the plaintiff. For that the assignment to him *296 is a preference, and if made voluntarily, and without legal compulsion, is an undue one, is, I think, demonstrable. It is true that an assignment of the debtors estate, which will deprive him of the benefit of the Act, must be his own voluntary act, and not by operation of law. But if a party takes advantage of legal process to give an undue preference, by making under it an assignment, it would be as much the debtor’s fraud, as if it had been done without the intervention of process.” As to what act does not constitute an undue preference, it is said, “the payment must be bona fide, and must not. be of such a portion of the defendant’s estate, as would shew that he intended to pay one in exclu.sion of all others.” An undue preference is then defined to be, “such an intentional” (not fraudulent) “prefer-ing of one creditor, as may enable him to receive payment, and altogether defeat, delay or hinder another from being paid. This is the effect of the assignment of the choses in action to Cathcart; it gives to him all the debtor’s means of payment, and thus defeats the plaintiff altogether.” These are the general principles deducibie from the case, and which controlled the decision of' the court, that the assignment to Cathcart was an undue preference. A fraudulent intention is not insisted on, or mentioned, as a constituent circumstance of an undue preference. The criterion of such preference, is affirmed to be such as altogether defeats, delays or hinders another creditor, and shews an intention to pay one in exclusion of all others.
In Crenshaw vs. Wetsel, it was objected to the defendant’s discharge, that he had, within three months before his arrest, paid or assigned his estate, or a part thereof, to some creditors in preference to the plaintiff. The jury found the defendant guilty on this, and three other grounds. This, however, was the only one considered by the court. The objection did not allege that the assignment was fraudulent — and there was, of course, no finding of the jury to that effect. The defendant appealed, on the ground that the circumstances did not constitute such ,an undue preference as should deprive him of the benefit of the Act. Johnson, J. delivering the opinion of the court, states the evidence in support of the charge to be, “that defendant *297 had, within three months before his arrest at.the suit of the plaintiffs, sold and disposed of the whole of his visible estate and effects, and appropriated the proceeds to the payment of some of his creditors, and assigned his books of account to others, to the exclusion of the plaintiff;” and states 'the question to be, “whether the circumstances stated, constitute such an illegal preference of one creditor over another, as to deprive the defendant of the benefit of the Act.” The judgment of the court was thus briefly expressed. “There can be no difficulty about the present case. The defendant knew he was insolvent, and .having ascertained the amount of his means by an actual sale of his property, and knowing, as he necessarily must have done, that they were insufficient to pay all his debts, in common honesty and fair dealing he ought to have distributed them, pro rata, amongst his creditors; and that was precisely what was contemplated by the Act.” The motion for a new trial was refused. In this case, and in Walker vs. Briggs, the question came up distinctly ; and it was adjudged, as, a conclusion of law, that a voluntary assignment, by an insolvent, of his whole estate, to one creditor or to several, in exclusion of others, was an undue preference. No fraud was charged in the objections to the discharge, nor found by the jury, and the decision of the court was unqualified. In Smith, Wright & Co. vs. Campbell & Co. it was decided that an assignment by an insolvent debtor of his whole estate to trustees, in trust to pay all his creditors, though with preferences, was not an undue preference. That is all which is decided by the case. In the opinion of the court, the definition of an undue preference, announced in Walker vs. Briggs to be “such an intentional prefering one creditor as may enable him to receive payment, and altogether defeat, delay or hinder another,” is confirmed. It is added, “this is, I still think, a just definition of an undue preference. To be within it; the preference must be fraudulent; and this is what is said by the subsequent cases. The intentional preference of one to another, so as altogether to defeat, delay or hinder another dr editor from being paid, presents all the ingredients which make out a fraud, either *298 at common law or under the statutes to prevent fraudulent conveyancesThe last proposition qualifies the preceding, and is obviously introduced to reconcile the whole opinion with Walker vs. Briggs, which declares an intentional assignment by a debtor, in insolvent circumstances, of his whole estate to one creditor, to be an undue preference, by affirming that such an assignment combines all the elements and indicia of fraud.
These are the only cases in the reports of assignments of the whole estate of the insolvent. Weed & Fanning et al. vs. Evans, was the case of a partial assignment of the debtor’s effects, bearing no proportion at all to his whole property. In that case, it was decided that such an assignment, to be an undue preference, should be fraudulent, and that the fraudulent intention was a question for the jury. But that is a very different case from this. The assignment of the whole, without leaving any thing at all remaining towards satisfying the rest of his creditors, is very far removed from an assignment of a particular part of his effects to a particular creditor. In that case it is said that no preference is undue, which is not fraudulent, and that intention is a question for the jury. But in so far as those propositions extend beyond the case, they are mere obiter dicta. The authority of solemn adjudications cannot thus be overruled by a side wind.
Having shewn, as I think, that the judgment of the court in this case goes beyond all former authority, I shall briefly enquire into the effect of it on the insolvent laws.
It may not be unprofitable to refer to the Act and co-temporaneous constructions, to shew the error of the more recent decisions, and particularly of the decision in this case,
The prison bounds Act provides that no prisoner shall be entitled to its relief, who shall, within three months prior to his arrest, “have paid or assigned his estate, or any part thereof, to one creditor in preference to anotherand in a subsequent part of the same clause, when providing for a trial of any accusation of a violation of the Act, directs that if any person is charged with an “undue preference,” j.t may be tried by a jury. The obvious import of- the *299 word “undue,” is contrary to the provision of the Act, which immediately precedes it, and it was only used to avoid repetition. From the enactment of the law until 1826, when Creyton & Sloan vs. Dickerson was decided, any payment, however inconsiderable, to one creditor, within three months from the arrest, was held an undue preference.
In Stover vs. Duren, 2 McC. 266, a witness proved that the defendant, since his arrest, had paid him twelve dollars. On the trial, it was submitted to the jury whether this was a fraudulent preference of one creditor over another. A new trial was granted, on the ground that the preference of one creditor to another, -per se, deprived the defendant of the benefit of the Act; and that the Act did not authorize any enquiry by the jury, whether it Was fraudulent or not.
In Creyton & Sloan vs Dickerson, 3 McC. 440, the defendant had paid thirty or forty dollars to a creditor. It was ruled that the mere payment of a sum of money to a creditor, should not prevent the defendant’s discharge ; and that a payment of small debt, incurred for the indispen-sible support of a man’s family, should not be adjudged an undue preference.
It must certainly be contrary to the intention of the Act, as it is inconsistent with former decisions, that an insolvent debtor may exercise a power of disposing of his whole property, in payment to one creditor, in preference to all the rest. When it is decided that it is not illegal for an insolvent debtor to make a voluntary, intentional assignment of his whole estate in payment of one creditor) every practical restraint which might operate for the protection of the creditor, is relinquished. The qualification of the power of the debtor, that, in the opinion of the jury, its exercise shall not be fraudulent, may prove a snare to the debtor, but is of no benefit to the creditor. If an- assignment of the whole estate of an insolvent to one creditor is not illegal, what circumstance shall determine it to be fraudulent? To defeat, delay, hinder and entirely exclude all other creditors, is the direct and immediate effect and intention, and the legal operation of the act. *300 This, it is decided, does not amount to an undue preference. Fraudulent design must then be sought and discovered in something else. It is difficult to conceive in what it can consist, except in making such an assignment to one who is not a creditor. The common law will take cognizance of such a case, and it is not within the provisions of the Act, which only regulates assignments to those who are creditors. Motives of resentment against the creditor, or in respect to his demand, cannot be the criterion of a fraudulent preference, for the injury to the creditor was the mischief the Act was designed to prevent, which is 'quite independent of any consideration, whether the preference proceeded from affection to the assignee or malice towards the creditor.
It is the duty of the court to give construction to all statutes, and, as far as possible, to direct and define their operation. But the effect of the decision in this case will be, to leave the question of undue preference almost, if not entirely, to the jury. If the voluntary assignment by an insolvent debtor of all his effects to a surety, in payment of a judgment confessed before the liability of the surety had attached by the debt becoming payable, and that under cover of legal process, and by procurement of the debtor (which is this case) be not illegal, it is difficult to state a case that would be illegal. The law will furnish no rule or principle by which to decide what act may constitute an undue preference, which can be determined only by the verdict of a jury. The only aid the court can give them in the enquiry 'will be, that no assignment which may be brought within this case, is an undue preference in law; but if they can discover any proof of fraudulent intention, which is not cognizable by the law, they may find the defendant guilty. The consequence of thus leaving the question of undue preference, undefined by law, to a jury, must prove mischievous, both to the debtor and creditor. Both will experience what, in the opinion in Weed and Fanning et al. vs. Evans, is described to be the tyranny and injustice of an administration of the law, where, in different cases, the same premises lead to different conclusions.
*301 Richardson, J.
The seventh section of the prison bounds Act is an important provision in cases of insolvent debtors,' and I embrace the occasion for offering my construction of its object and meaning.
The enactment is as follows — “nor shall any prisoner be discharged, without fully satisfying the action or execution on which he or she is confined, if, (fee. (fee. or who shall have, within three months before his or her confinement, or at any time since, paid or assigned his estate, or any part thereof, to one creditor in preference to another, or fraudulently sold, conveyed or-assigned his estate, to defraud his creditors; but wherever a prisoner shri.ll be accused, by the plaintiff or his agent, of fraud, or his having given an undue preference to one creditor to the prejudice of the plaintiff, (fee. (fee. it shall be lawful, (fee. for the Judge, (fee. to direct a jury'to be impanneled,” (fee. It is. plain that the jury are to try the charge of fraud, in case of a fraudulent assignment of his estate to any one. This constitutes one distinct class of cases. Or to try the charge of undue preference of one creditor to another, which constitutes another a-nd very different class of cases ; of which latter, fraud, at least in its proper and usual meaning — deceit or turpitude, is not and cannot be predicated. It cannot be immoral, vile, base or fraudulent, to prefer one just creditor to another, where both cannot be paid. It is a mere choice or selection from among equal debts; and the privilege belongs to all debtors, as a general rule of law.
Most assuredly, any man may duly, justly, and with exact moral propriety, prefer the repayment or return of a trust fund, confided to his keeping, as one never to be put" at hazard in trade or speculation, but which he has incam tiously so used and lost. Such a preference could not be undue. And such a case plainly indicates the import and meaning of the Act, in the terms “undue preference,” as contradistinguished from the other class of cases of fraudulent or dishonest assignments of estates, not to pay a creditor, but to cover a man’s estate against creditors generally. Such are the frauds meant by the Act in the former class of cases-r-they pre-suppose intrinsic dishonesty. But good *302 men may carry out their choice or selection of creditors, to undue partiality and preference, without any fraud or turpitude. And in such cases, they are simply estopped in the privilege of swearing out of, as given by the Act, and remain in statu quo, in jail, or the prison bounds. In such a case there is no penalty, but the loss of the privilege of being discharged without full payment of the plaintiff. The positive penalty of the seventh section of losing the prison bounds, is confined to cases of rendering no schedule; and in the tenth section, the severest penalty is also confined to those of false schedules, and does not extend to cases of only undue preference. I would say little upon the merits or demerits of the particular case before the court. Perhaps every charge of “undue preference” constitutes a complex question, very proper for the consideration of a jury. I have supposed the case of a trust fund, the preference of which could scarcely, in any case, be deemed undue. Now take the converse case, that of an ordinary debt of a failing trader, being expressly preferred to the return of the trust money so misapplied and lost; but this defeated by an express assignment to pay the ordinary debt in preference. Would or would not such an assignment, apart and separated from all fraud, be an undue preference. I need scarcely say every man responds, yes !
What, then, should be the rule in cases of the charge of undue preference 'l. It must have reference to the debt preferred — to the particular obligation of the debtor — to the confidence created by him, with the party complaining, to his right of equality, to the time and manner of the 'preference, (fee. (fee. Was it not undue, inconsistent with duty 1 The jury must judge. Let us now turn to the adjudged cases, to find if they forbid the proposed construction of the Act, and have rendered undue preference and fraud,'one and the same. The first, is that of Stover vs. Duren, 2 McC. 266. That decision would make every preference of one creditor to the plaintiff, if made within the time limited by the Act, ipso facto, “undue.” None of the’ court now concur in so indiscriminate a rule. And my own objections are manifest from what has been just set *303 forth. I did not concur, originally, in that exposition. But the majority did concur. The next cases are Bowen's case, Bice, 352; and Evans’s case, 2 Spears, 232. In those cases, the Judge pronouncing the decision considers “undue preference” and fraud, as one and the same. But I cannot perceive, in the points necessarily adjudged, the authority for such identity between “undue preference” and a moral fraud.
The term fraud, is often predicated of actions or conduct done in contravention of the specific provision or inhibition of an Act of the Legislature. As, for instance, the resolution of Banks not to pay in gold or silver. No one supposed it a moral fraud, but a fraud, as being in contra-r vention of, and infracting, their charters. So in the case of Stover vs. Duren, the Judge might, in this sense, have well said, every possible preference, made within the time limited, is, •per se, a fraud — is against the prohibition of any preference by the Act, in fraud of the Act. But take the decisions in their extreme sense and opposition, and they stand as follows. First- — every preference of one creditor to another, given within three months, étc. is, per se, “undue,” and an infraction of the prison bounds Act; Stover vs. Duren. Secondly. No preference is undue, so' as to be an infraction of the Act, unless it be fraudulent, morally fraudulent; Bowen's case and Evans's. If so, the latter decision, correcting the former, is, itself, as fair a subject for judicial correction. And it may be, as in many extreme opinions, the wiser judgment lies between them. My course has been to shew — First. From the letter of the Act. Secondly. From its words and object, as a necessary substitution for a bankrupt Act. Thirdly. From moral consistency and rational propriety. That the preference of one creditor to others may be undue, that is, inconsistent with a due regard for the claims of other creditors, without such preference being dishonest or fraudulent — and that it is, by no means, to be put on the footing of a fraudulent assignment, to mask a man’s estate against legal liability. That if the two be confounded, the plain and necessary guard of the Act against extreme partiality, perverse or angry prejudice, and the wilfulness of incarcerated debtors, may be greatly defeated,